IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| SINAI HOSPITAL OF BALTIMORE, INC., | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. RDB-14-948 |
| 1199 SEIU UNITED HEALTHCARE WORKERS EAST, | * | |
| | * | |
| Defendant. | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Plaintiff Sinai Hospital of Baltimore, Inc. ("Sinai") has filed this action against Defendant 1199 SEIU United Healthcare Workers East ("the Union") under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, seeking vacatur of an arbitration award in favor of the Union. Currently pending before this Court is the Union's Motion to Dismiss or, in the Alternative, for Summary Judgment ("Motion for Summary Judgment") (ECF No. 8). On October 20, 2014, this Court held a hearing on the pending motion (ECF No. 21). For the reasons that follow, Defendant Union's Motion to Dismiss, or in the Alternative, for Summary Judgment, construed as a Motion for Summary Judgment,[1] (ECF No. 8) is GRANTED.

---

[1] At the October 20, 2014 hearing, Sinai and the Union agreed that, given the factual findings of the arbitrator, there is no genuine dispute as to any material facts. *See* ECF No. 21. Defendant's motion is thus

<u>BACKGROUND</u>

In ruling on a motion for summary judgment, this Court reviews the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *see also Hardwick ex rel. Hardwick v. Heyward*, 711 F.3d 426, 433 (4th Cir. 2013).

Plaintiff Sinai Hospital of Baltimore, Inc. is a not-for-profit corporation organized under Maryland law and operating in Maryland. Compl. ¶ 3, ECF No. 1. The arbitration award at issue stems from the termination of an employee of Sinai, Dennis Day ("Mr. Day"). *Id.* at ¶¶ 11-15. Mr. Day, a twenty-four year employee of Sinai, is represented by Defendant Union. Compl. Ex. 1, 3, ECF No. 1-3. Under Section 3.1 of the Collective Bargaining Agreement between the Union and Sinai ("the CBA"), Sinai retained authority to implement policies, regulations, and other rules governing a broad range of subjects, from "patient care, research, [and] education," to employee conduct and discipline "for cause." Compl. Ex. 2, 9, ECF No. 1-4. Under this authority, Sinai promulgated a "Workplace Violence Policy" that stipulates the various actions that qualify as "workplace violence."[2] Compl. Ex. 3, 1, ECF No. 1-5. If an employee commits any of these actions, he is "subject to corrective action or discipline, most often resulting in termination of employment." *Id.* at 2.

---

ripe for construing as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. *Id.*

[2] Among other actions, Sinai defines "[w]orkplace violence" as: (1) "[d]eliberately causing physical injury to another person[;]" (2) "[e]ngaging in behavior that creates a reasonable fear of injury in another person[;]" (3) "[p]ossessing, brandishing, or using a weapon while on LifeBridge Health premises or engaged in LifeBridge Health business[;]" and (4) "[t]hreatening to injure an individual or to damage property[.]" Compl. Ex. 3, at 1.

On March 28, 2012, Mr. Day allegedly made threatening remarks directed at his supervisor, Paul DiPino ("Mr. DiPino").[3] Compl. Ex. 1, 2, ECF No. 1-3. Mr. DiPino and another Sinai employee, Halla Ingvars ("Ms. Ingvars") overheard the alleged threats[4] over a VOCERA communications device worn by Mr. Day. *Id.* at 5. Mr. Day, who was at lunch with his colleagues, was unaware that the VOCERA device had been activated. *Id.* at 5-6. Although Mr. DiPino was not alarmed by the comments, Ms. Ingvars found them to be threatening. *Id.* at 6. She therefore reported the alleged threats to a supervisor and Sinai commenced an investigation of the incident. *Id.*

During the course of the investigation, Roger Sheets ("Mr. Sheets"), Sinai's Corporate Security Director, took written statements from Mr. DiPino and Ms. Ingvars. *Id.* Mr. Sheets also interviewed Mr. Day and his lunch companions, but did not ask them to submit written statements. *Id.* at 7. He then inspected Mr. Day's locker, to which Mr. Day had affixed a personal lock, in violation of Sinai policy. *Id.* Mr. Day's locker was filled with "clutter." *Id.* During the course of removing the "clutter" from the locker, Mr. Sheets discovered a knife with a five-inch blade. *Id.* On the basis of Mr. Day's possession of this knife and the alleged

---

[3] Immediately prior to this incident, Mr. Day met with Mr. DiPino to discuss an ongoing paycheck dispute. Compl. Ex. 1, at 3. The parties disagree as to the tenor of the meeting – Mr. Day states that Mr. DiPino was confrontational and made "controversial" comments, whereas Mr. DiPino explains that the conversation was not antagonistic. *Id.* at 4.

[4] The Arbitrator made no conclusive finding as to the content of the alleged threats because he found that witness accounts varied dramatically. Compl. Ex. 1, at 18. He concluded that it is "difficult to substantiate" the different accounts, as Sinai took contemporaneous written statements only from Mr. DiPino and Ms. Ingvars, but not from Mr. Day or his lunch companions. *Id.* at 19.

threats directed toward Mr. DiPino, Sinai found that Mr. Day had violated the Workplace Violence Policy and thus terminated Mr. Day on April 2, 2012.[5] *Id.* at 8.

After his discharge, the Union filed a grievance on behalf of Mr. Day to challenge Sinai's decision. Compl. ¶ 12. The parties failed to reach a resolution under the CBA-prescribed procedures, thus they submitted their dispute for arbitration. *Id.* at ¶ 13. The assigned arbitrator conducted hearings and reviewed the parties' arbitration briefs before reaching the conclusion that Sinai did not have "just cause" for terminating Mr. Day. Compl. Ex. 1, at 2, 22. The arbitrator thereby ordered Sinai to "reinstate[] [Mr. Day] to his former position and pa[y] back pay up to and including April 8, 2013 and after September 23, 2013." *Id.* at 1.

Plaintiff filed this action against Defendant shortly after the arbitrator rendered his arbitration award. *See* Pl.'s Mem. in Supp. of Mot. to Vacate Labor Arbitration Award, 1-2 n.2, ECF No. 1-2. In its Complaint and accompanying Motion, Sinai asks this Court to vacate the arbitration award and remand to the arbitrator to address alleged fundamental flaws. Compl. ¶ 16. Specifically, Plaintiff contends that he ignored critical provisions of the parties' CBA and Sinai's Workplace Violence Policy. *See* Pl.'s Mem. in Supp. of Mot. to Vacate Labor Arbitration Award, at 1. Given these alleged deficiencies, Sinai asserts that the arbitration award "fails to draw its essence" from the operative polices. Compl. ¶ 16.

---

[5] On its official "Disciplinary Action Form," Sinai listed two justifications for Mr. Day's termination. Def.'s Mot. for Summ. J. Ex. 3, 1, ECF No. 8-4. First, Sinai reported that Mr. Day "violated the LifeBridge Heath Human Resources Workplace Violence policy by making threatening statements about his manager to co-workers that were witnessed by the manager himself and another member of leadership." *Id.* Second, Mr. Day's possession of a knife, in a locker "secured with his own lock, not the Hospital issued one[,]" constituted an additional violation of the Workplace Violence Policy. *Id.*

After answering Plaintiff's Complaint, Def.'s Answer (ECF No. 7), Defendant moved for summary judgment on the grounds that Plaintiff's argument is not supported by the law and is overly formalistic. *See* Def.'s Mot. for Summ. J., ECF No. 8. In response, Plaintiff reiterated the arguments of its Complaint. Pl.'s Resp. in Opp. to Def.'s Mot. for Summ. J., ECF No. 13. The Union subsequently filed a Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment (ECF No. 14). This Court then granted Sinai's Motion for Leave to File Sur-Reply (ECF No. 16) and Sinai filed its Sur-Reply to Defendant's Motion for Summary Judgment (ECF No. 18). Finally, this Court conducted a hearing on October 20, 2014 to address the pending Motion for Summary Judgment (ECF No. 21).

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249. In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

However, this Court must also abide by its affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993). If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment must be granted. *Anderson*, 477 U.S. at 249-50.

Judicial review of a labor arbitration award is tightly constrained, as it is "among the narrowest known to law." *U. S. Postal Serv. v. Am. Postal Workers Union, AFL-CIO*, 204 F.3d 523, 527 (4th Cir. 2000) (quoting *Union Pac. R.R. v. Sheehan*, 439 U.S. 89, 91 (1978)). A court must "determine only whether the arbitrator did his job–not whether he did it well, correctly, or reasonably, but simply whether he did it." *Mountaineer Gas Co. v. Oil, Chem. & Atomic Workers Int'l Union*, 76 F.3d 606, 608 (4th Cir. 1996). Vacatur is not appropriate when a court simply disagrees with the arbitrator's construction of the operative agreements. *See Postal Serv.*, 204 F.3d at 527; *see also United Steelworkers of Am. v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 599 (1987) (explaining that "courts have no business overruling [the arbitrator] because their interpretation of the contract is different from his"). Instead, if the arbitrator "is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987).

## ANALYSIS

The Union, in moving for summary judgment, argues that Sinai has failed to meet the high burden for vacatur of arbitration awards set forth by the Supreme Court and the Fourth

Circuit. Given the factual findings of the arbitrator, Defendant contends that there is no genuine dispute of material fact, and thus it is entitled to judgment as a matter of law. Sinai does not dispute the Union's assertion that judgment as a matter of law is appropriate.[6] Nor does Plaintiff suggest that the burden on a party moving for vacatur is not onerous. Rather, Sinai argues that it has met this high standard by proving that the arbitrator ignored critical provisions of the CBA and the Workplace Violence Policy. Additionally, Plaintiff alleges that the award disregards Sinai's rationale for a robust approach to workplace violence.[7] Given these deficiencies, Sinai insists that vacatur and remand are required.

Sinai bears a heavy burden in this case. This "heavy burden," as noted by the United States Court of Appeals for the Fourth Circuit in *United States Postal Service v. American Postal Workers Union, AFL-CIO*, is critical to maintain confidence in the arbitration process. *See* 204 F.3d at 527. As the Fourth Circuit explained, "allow[ing] [courts] to delve into the merits of an arbitration award" would "seriously undermine[]" the "federal policy of settling labor disputes by arbitration." *Id.* If courts were free to pick apart the arbitrator's decision, then the "binding [arbitration] process" becomes "purely an advisory one, and ultimately impair[s] the value of arbitration for labor and management alike." *Westvaco Corp. v. United Paperworkers Int'l Union*, 171 F.3d 971, 974 (4th Cir. 1999) (internal quotation marks omitted).

Given this rationale, parties that have contracted to submit their disputes to arbitration bear a heavy burden when moving for vacatur. Essentially, the arbitrator's award

---

[6] As previously mentioned, the parties agreed that their dispute is ripe for summary judgment at the Motion Hearing held on October 20, 2014.

[7] In the memorandum accompanying its Complaint, Sinai asserts that Mr. Symonette merely "pa[id] lip service to [these] grave concerns." Pl.'s Mem. in Supp. of Mot. to Vacate Labor Arbitration Award, at 15.

"must be upheld so long as it 'draws its essence from the agreement.'" *Patten v. Signator Ins. Agency, Inc.*, 441 F.3d 230, 235 (4th Cir. 2006) (quoting *Upshur Coals Corp. v. United Mine Workers, Dist. 31*, 933 F.2d 225, 229 (4th Cir. 1991)). An award "fails to draw its essence from the agreement only when the result is not 'rationally inferable from the contract.'" *Patten*, 441 F.3d at 235 (quoting *Apex Plumbing Supply, Inc. v. U.S. Supply Co.*, 142 F.3d 188, 193 n.5n (4th Cir. 1998)). In other words, a court may question the arbitrator's interpretation, but it may not vacate the award unless that interpretation is so misguided as to be irrational.

The arbitrator is "bound to consider and apply the relevant contractual provisions," as he derives his authority only from the bounds of that contract. *Verizon Corporate Services Corp. v. Communications Workers of America, AFL-CIO*, 362 Fed. App'x 352, 355-56 (4th Cir. 2010); *see also Champion Int'l Corp. v. United Paperworkers Int'l Union, AFL-CIO*, 168 F.3d 725, 729 (4th Cir. 1999) (explaining that the arbitration award must be "grounded in the collective bargaining agreement"). When the arbitrator "has disregarded or modified unambiguous contract provisions or based an award upon his own personal notions of right and wrong," vacatur is appropriate. *Three S Delaware, Inc. v. DataQuick Information Systems, Inc.*, 492 F.3d 520, 528 (4th Cir. 2007); *see also Patten*, 441 F.3d at 235 (stating that the arbitrator cannot ignore "unambiguous" provisions in the parties' agreement). If the language is "unqualified and admits of no exception," then an arbitrator's failure to apply those clear provisions will open the door for a court to second-guess the judgment of the arbitrator. *Postal Serv.*, 204 F.3d at 528.

In this case, the arbitrator did not ignore the plain and unambiguous language of the Collective Bargaining Agreement and Workplace Violence Policy when he concluded that Sinai did not have just cause to terminate Mr. Day. Rather, he incorporated his interpretation of the operative provisions into his award such that the result is "rationally inferable." Mr. Day allegedly violated two provisions of Sinai's Workplace Violence Policy: (1) "[t]hreatening to injure an individual . . ." (the "threats clause");[8] and (2) "[p]ossessing . . . a weapon while on LifeBridge Health premises . . ." (the "weapon clause").[9] Compl. Ex. 1, at 1. After conducting hearings and making factual findings related to the charges, the arbitrator determined that his remarks did not rise to the level of "actual threats" under the Workplace Violence Policy. The arbitrator did determine that Mr. Day violated the weapon clause, but reasoned that this violation alone, given the context, did not warrant termination. To reach this decision, the arbitrator applied the principles of justice derived from the operative provisions, and not his own notions of fairness.

In examining the award, this Court will consider only whether the arbitrator actually interpreted the controlling agreements, not whether this Court agrees with that interpretation. Far from contradicting the clear language of the CBA and Workplace Violence Policy, the award demonstrates fidelity to the controlling provisions. First, the

---

[8] Mr. Day's Discipline Action Form, when explaining the threat-based violation, did not directly reference the threats clause. *See* Def.'s Mot. for Summ. J. Ex. 3, at 1. This Court, however, will infer such a reference because Sinai described this violation as "making threatening statements about his manager," language that closely mirrors that of the threats clause. *Id.*

[9] Sinai argues that Mr. Day violated a third provision – "[e]ngaging in behavior that creates a reasonable fear of injury in another person" – but the Disciplinary Action Form contained no reference to this provision. *See* Def.'s Mot. for Summ. J. Ex. 3, at 1. This provision is a critical component of Plaintiff's opposition to the arbitration award, thus this Court will address it in turn.

arbitrator recognized the broad authority of Sinai to craft a violence policy and promulgate relevant regulations under the parties' CBA. He quoted Section 3.1 in full, indicating that he understood the source and scope of his inquiry. Under this discretion, he required Sinai to prove just cause by clear and convincing evidence. The arbitrator based this selection on Mr. Day's lengthy tenure and unblemished work history, a reasonable decision given the Workplace Violence Policy's failure to specify a standard of proof.

Second, he conducted a thorough analysis of the alleged violations of the threats and weapon clauses by considering the context in which the threats were made. Context is crucial to determine the severity of an alleged action, and it is an exercise that is common in any legal analysis. Regarding the threats clause, Mr. Day was "indeed upset with Mr. DiPino" after the two men met to discuss Mr. Day's paycheck. *Id.* at 17. Although such a feeling could motivate an individual to make threatening comments, Mr. Day was not so easily triggered. Rather, the record indicates that there was no evidence indicating that Mr. Day intended to go through with the actions described in his alleged threats. Mr. Day did not, after making the comments, proceed to his locker to retrieve his knife; instead, he continued to perform his ordinary duties that day and the next. *Id.* at 18. Even further, the arbitrator was unable to substantiate the credibility of each witness due to Sinai's decision to take written statements only from Mr. DiPino and Ms. Ingvars. *Id.* at 18-19. Given the discrepancies between the proffered accounts, the arbitrator concluded that he could make no finding as to the content of Mr. Day's remarks. *Id.*

The arbitrator's application of the weapon clause exhibits similar fidelity. In determining that Mr. Day did violate this clause, the arbitrator understood and never disputed that mere possession of a weapon constitutes a violation of the Workplace Violence Policy. His analysis of each violation does not contradict or ignore the clear language of the relevant provisions. Employing the authority vested in him by the parties, the arbitrator simply applied the operative provisions to his factual findings.

Likewise, the arbitrator hewed to the guidance of the Workplace Violence Policy in reaching the conclusion that termination of Mr. Day was unwarranted. When an employee violates the Workplace Violence Policy, he is "subject to corrective action or discipline, *most often* resulting in termination of employment" (the "penalty clause"). Compl. Ex. 3, at 2 (emphasis added). Admittedly, the penalty clause does state that termination is the penalty "most often" applied. Yet, this clause does not mandate that result. Instead, the decision-maker may arguably impose any "corrective action or discipline." In this case, several factors support a lesser penalty than discharge. First, Mr. Day is a twenty-four year employee of the hospital with an unblemished record. Second, on the basis of the arbitrator's factual findings, there is no evidence that Mr. Day intended to carry out his alleged threats. As noted above, after he made the remarks at issue, he returned to his normal work routine. Third, the arbitrator was unable to substantiate the credibility of the witnesses.[10] Without this evidence, the arbitrator could not resolve the discrepancies between the various accounts. The content

---

[10] As previously noted, the arbitrator concluded that he was unable to substantiate the credibility of the witnesses due to Sinai's failure to take contemporaneous written statements from Mr. Day and his lunch companions. *See* Comp. Ex. 1, at 18-19. Based on the record before this Court, Sinai took written statements only from Mr. DiPino and Ms. Ingvars. *Id.*

of the alleged threats thus remains unresolved. Finally, although Mr. Day's possession of a knife was a violation of the Workplace Violence Policy, it was buried beneath "clutter" at the bottom of his locker. This violation alone reasonably does not merit termination under the vague guidance of the penalty clause. The arbitrator's conclusion that discharge was inappropriate is a penalty thus contemplated by the penalty clause and supported by the record. Given this fidelity, the arbitration award does derive its essence from the CBA and the Workplace Violence Policy.

In support of its plea for vacatur, Plaintiff advances two arguments. First, Sinai contends that the arbitrator ignored essential provisions of the Workplace Violence Policy, thereby rendering the award fatally flawed and ripe for vacatur. Second, Sinai argues that the arbitrator disregarded its rationale for a robust approach to workplace violence, preferring his own conception of justice. Sinai does not quarrel with the arbitrator's discretion to analyze whether it had just cause in terminating Mr. Day. Rather, Plaintiff argues that the arbitrator's award is so deficient that it failed to draw its essence from the governing agreement and policy. For the following reasons, each argument is unpersuasive.

In concluding that just cause was not present, Sinai contends that the arbitrator ignored the reasonable fear of injury and penalty clauses both in substance and in form. When, as is alleged, the arbitrator "blatantly ignore[d] the unambiguous language" of the operative provisions, the Fourth Circuit demands vacatur. *Mountaineer Gas*, 76 F.3d at 610. While Sinai cites to the correct law, its application is misguided. Upon examination of the award, it is clear that the arbitrator understood and applied the relevant provisions of the

Workplace Violence Policy. First, Sinai did not include the reasonable fear of injury clause in its Discipline Action Form that described the charges for which Mr. Day was terminated. Plaintiff did raise the reasonable fear of injury violation in its arbitration briefs. *See* Pl.'s Sur-Reply, 1-2, ECF No. 18. If the arbitrator was tasked with determining whether Sinai terminated Mr. Day for just cause, then the scope of his inquiry should be the violations described by Sinai at the time of the discharge. Mr. Day may have created a reasonable fear of injury in someone, but Sinai did not, according to its Discipline Action Form, terminate him for that alleged violation.

Second, the arbitrator's failure to quote or cite to the specific language of the Workplace Violence Policy does not mandate vacatur. The Fourth Circuit does not require this level of formalism. Sinai contends that, under the guidance of *Champion*, 168 F.3d at 731, and *Clinchfield Coal Co. v. District 28, United Mine Workers of Am. & Local Union #1452*, 720 F.2d 1365, 1368-69 (4th Cir. 1983), failure to cite or quote the relevant language is, in and of itself, grounds for vacatur. Yet, *Champion* and *Clinchfield Coal* did not establish such a broad, formal rule. In *Champion*, the arbitrator failed even to apply the collective bargaining agreement, instead substituting an inoperative policy that he "explicitly recognized . . . did not apply." The Fourth Circuit thus explained that, when the arbitrator cites to an irrelevant provision, rather than the operative agreement, it will conclude that the arbitrator impermissibly "drew on his own notions of fairness." *Id.* Similarly, the arbitrator in *Clinchfield Coal*, after stating an issue, never discussed any of the relevant contract provisions that

governed that issue. 720 F.2d at 1368-69. Essentially, the arbitrator announced a decision

without providing any bases for his conclusions. *Id.* at 1369.

In contrast, the arbitrator for Sinai and the Union applied only the Collective

Bargaining Agreement and Workplace Violence Policy, which both parties agree are the

governing documents. Unlike the arbitrator in *Champion*, this arbitrator clearly understood

and applied *only* the controlling provisions, as he quotes the CBA directly and discusses the

application of the Workplace Violence Policy throughout the award.[11] This Court thus will

not infer that the arbitrator applied his "own notions of fairness" solely because the

arbitrator did not quote directly from the Workplace Violence Policy. If an arbitrator only

had to cite or quote the operative provisions so as to avoid vacatur, then on remand he

could simply insert the relevant quotations into the award. The resulting award would be

identical to the offending award except for the addition of a few quotations. Requiring such

formality could transform the presently heavy burden for vacatur into an empty and easily-

circumvented standard.

Moreover, the Fourth Circuit mandates vacatur only where the arbitrator contradicts

or "blatantly ignore[s] the unambiguous language," not the overly formalistic rule urged by

Plaintiff. *Mountaineer Gas*, 76 F.3d at 610. Sinai argues that, even under this standard, the

arbitrator's treatment of the penalty clause should still fail. Specifically, Sinai asserts that the

arbitrator's conclusion that a warning letter, rather than termination, was the appropriate

---

[11] In fact, the arbitrator referenced the Workplace Violence Policy eighteen times throughout the award. For example, he acknowledged that the Workplace Violence Policy "clearly states that the possession [of a weapon] itself is grounds for termination." Compl. Ex. 1, at 10.

14

punishment, contradicts the clear language of this provision. Yet, Sinai's argument assumes that the penalty provision unambiguously requires termination. Rather, the provision states that termination is the penalty "most often" applied. The Workplace Violence Policy gives no clues as to *how* frequently this penalty should be selected, or even the factors a decision-maker should consider in reaching that conclusion. Given that this provision is inherently vague and ambiguous, it can hardly be argued that the arbitrator's conclusion contradicted the "clear" language. In fact, the arbitrator employed the discretion created by the penalty clause to determine the appropriate penalty for the situation at hand.

Finally, after reviewing the award, this Court can find no indication that the arbitrator ignored Plaintiff's significant interests in a strong workplace violence policy. This conclusion does not undermine the importance of Sinai's concerns. As persuasively explained in Sinai's briefs, a strong policy is critical to foster a safe hospital environment and meet the expectations of the governing hospital bodies. *See* Pl.'s Mem. in Supp. of Mot. to Vacate Labor Arbitration Award, at 15. The arbitrator did not reject these concerns when determining that a more lenient penalty was appropriate. Rather, he cited to Mr. Day's long, unblemished record, his resumption of his ordinary duties, and the relative inaccessibility of the knife, among other factors, as support for his conclusion. While the underlying rationale of the Workplace Violence Policy may be significant, the equivocal language of the penalty clause does not convey a similar degree of concern. Under Section 3.1 of the CBA, Sinai may certainly promulgate a zero tolerance policy with termination as the penalty for any instance

of workplace violence.[12] The language of the penalty clause in its current form, however, vests discretion in the decision-maker. The arbitrator thus used this discretion when he concluded that, given the context of the alleged threats and weapon possession, Sinai did not have just cause to terminate Mr. Day.

In sum, the arbitrator drew the essence of his analysis from the CBA and the Workplace Violence Policy. He carefully considered each alleged violation and exercised the discretion vested in him by the relevant provisions to determine that Sinai did not have just cause to terminate Mr. Day. Even if this Court disagreed with the arbitrator's conclusions, vacatur is inappropriate unless the arbitrator ignored the governing agreements and implemented his own brand of justice. Plaintiff thus has failed to meet the weighty burden for vacatur.

<u>CONCLUSION</u>

For the reasons stated above, Defendant Union's Motion to Dismiss, or in the Alternative, for Summary Judgment, construed as a Motion for Summary Judgment (ECF No. 8) is GRANTED.

A separate Order follows.

Dated:                                    _____/s/_____
                                          Richard D. Bennett
                                          United States District Judge

---

[12] At the hearing on October 20, 2014, counsel for both parties acknowledged that Sinai is free to adopt such a policy at any time it chooses.